COMMONWEALTH *vs.* TONY SMITH.

Suffolk.    February 10, 1975. — March 24, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Receiving Stolen Goods.    Motor Vehicle,* Receiving stolen motor vehicle.

At the trial of complaints for receipt of stolen automobiles evidence that at a gasoline station, at which about ten cars were parked, the defendant gave a false name and identification to police, that he told them that he managed the station for the owner and that he was "doing a motor job" on one of the parked cars "for a friend," that he drove away in another car and did not return, and that the two automobiles, as well as a third, had been stolen, warranted a finding that the defendant was in possession of the stolen automobiles. [145-146]

In the absence of some explanation by the defendant to account for his possession of certain stolen automobiles, an inference that he knew that the automobiles were stolen was warranted by evidence that the defendant managed a gasoline station, that about ten cars were parked at the station, that several stolen automobiles were among them, and that they had been stolen at different times. [146-147]

THREE COMPLAINTS received and sworn to in the Municipal Court for the Roxbury District.

Upon appeal to the Superior Court the cases were tried before *Roy, J.*

The cases were submitted on briefs.

*Susan Baronoff* for the defendant.

*Garrett H. Byrne,* District Attorney, *Joseph E. Coffey & Paul F. Donovan* for the Commonwealth.

ARMSTRONG, J.    The defendant was convicted by a jury on three complaints for receipt or concealment of stolen automobiles, knowing them to have been stolen. G. L. c. 266, § 28. The case is before us on a bill of exceptions which recites that an exception was taken to the denial of the defendant's "motion for a directed verdict." Because it makes no difference to the outcome of the case, we assume (as do both briefs) that the motion was addressed to each of the three complaints.

There was evidence that on June 23, 1972, two police detectives, acting on undisclosed information, went to a gasoline service station in Roxbury where ten cars, more or less, were parked. There they met the defendant, who gave them a false name and displayed a Connecticut driver's license made out to a person of that name. The defendant stated that he managed the station for its owner, that the owner was never at the station, and that the owner used the station as a front for illegal activities. There was conversation concerning one of the parked cars, a 1972 Buick, which had no wheels; the defendant stated he was "doing a motor job" on it "for a friend." The detectives recorded the registration numbers of the various cars and one of them went off to determine whether any of the cars had been reported as stolen. Before the detective returned, the defendant drove away from the station in a 1970 Buick and did not return. The 1970 Buick "was recovered on July 6, 1972, in District 4."

The detective who had left learned that the 1972 Buick (the wheels of which could not be found at the station) had been reported stolen on June 3, 1972. The 1970 Buick, which the defendant drove away, had been reported stolen on March 14, 1972. A third car parked at the station, a 1969 Buick with a missing engine, had been reported stolen on June 20, 1972. Those three Buicks are, respectively, the subjects of the three complaints.

The defendant argues that the jury, on this evidence, were not warranted in finding that he was in possession of any of the cars parked at the garage other than the 1970 Buick which he drove away, nor was there evidence from

which it might properly have been found that the defendant knew that any of the cars were stolen.

The defendant's argument concerning possession is not tenable. He concedes that he received or possessed the car he drove away. His inability to drive more than one car at a time obviously does not mean he could not possess more than one car at a time. Except for his driving the 1970 Buick away, no distinction is shown between it and the other cars in the station. The defendant told the detectives that he managed the station. He "test drove" one car before his departure. He stated that he was doing a "motor job for a friend" on the 1972 Buick. From such evidence the jury were warranted in concluding that the defendant had such dominion and control over all the cars parked in the station as to be the equivalent of possession. *Commonwealth* v. *Kuperstein,* 207 Mass. 25, 27 (1910). *Commonwealth* v. *Guerro,* 357 Mass. 741, 752-753 (1970). *Commonwealth* v. *Lee,* 2 Mass. App. Ct. 700, 704 (1974).

The defendant acknowledges the rule that "[p]ossession of recently stolen property puts the burden of explanation upon one charged with having stolen it . . . [or] with having received property, knowing it to have been stolen." *Commonwealth* v. *Kelley,* 333 Mass. 191, 193-194 (1955). *Commonwealth* v. *Wilbur,* 353 Mass. 376, 384 (1967), cert. den. 390 U. S. 1010 (1968). *Commonwealth* v. *Ryan,* 355 Mass. 768, 773 (1969). *Commonwealth* v. *Obshatkin,* 2 Mass. App. Ct. 1, 3 (1974). He argues, however, that the rule has no application to the car he drove away, because it was not recently stolen, having been reported stolen on March 14, 1972, more than three months before the date he is shown to have possessed it. We are inclined to doubt the validity of the defendant's argument, because in *Commonwealth* v. *Kelley, supra,* at 194, the rule was held to be properly applied to possession of stolen property fifty-four days after a robbery in circumstances where, as in this case, there was more evidence from which guilty knowledge might be inferred than mere unexplained possession of stolen property. Nor are we persuaded by the defendant's contention that, even if the rule is applicable, his burden of explanation was

entirely satisfied as a matter of law by the nature of his business of operating a service station. To accept the contention would make a service station or garage a virtually impregnable base for a stolen car operation. See *Commonwealth* v. *Ventola,* 1 Mass. App. Ct. 459, 467 (1973).

We rest our decision, however, on the ground that one's knowledge or belief that goods were stolen may be inferred from his possession of many such items whether they were recently stolen or not. That several cars stolen at different times found their way into the defendant's possession and constituted a substantial percentage of the cars in his possession is a fact which calls for some explanation. Absent some explanation, the inference the jury drew was warranted. It was a question of fact to be determined by them. We read *Commonwealth* v. *Peopcik,* 251 Mass. 369, 371-372 (1925), as an application of this principle. Numerous cases from other jurisdictions recognize the admissibility of such evidence for the purpose of showing guilty knowledge. *United States* v. *Brand,* 79 F. 2d 605, 606-607 (2d cir. 1935), cert. den. 296 U. S. 655 (1936). *Wertheimer* v. *State,* 201 Ind. 572, 586-587 (1929). *State* v. *Renslow,* 211 Iowa 642, 643-644 (1930). *Commonwealth* v. *McGarvey,* 158 Ky. 570, 574-575 (1914). *State* v. *Keays,* 97 Mont. 404, 414-416 (1934). *Kluting* v. *State,* 90 Tex. Crim. 44, 49-50 (1921). *Stapleton* v. *Commonwealth,* 140 Va. 475, 489-490 (1924).

*Exceptions overruled.*